IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

UNITED STATES OF AMERICA

v.

TAUHEED LLOYD,

Defendant.

CRIMINAL ACTION
NO. 21-81

**OPINION**

**Slomsky, J.**                                                                                                  **July 22, 2022**

## I.      INTRODUCTION

In this criminal case, Defendant Tauheed Lloyd is charged with unlawfully possessing a firearm while being a felon.  The charge arose on September 30, 2020, when the Philadelphia Police Department's ("PPD") 16th District Narcotics Enforcement Team ("NET") conducted a covert surveillance operation in a high crime area that led to the arrest of Lloyd and the search and seizure of a white Nissan Altima (the "vehicle") registered to him.  During the search, Team officers recovered from the trunk of his vehicle a Weihrauch .357 revolver (the "firearm") and six live rounds of ammunition.  On March 10, 2021, Defendant was charged with possession of a firearm by a felon, in violation of 18 U.S.C. §§ 922(g)(1) and 924(e).

Before the Court are a series of Motions filed by the parties.  First, Defendant filed an Amended Motion to Suppress Physical Evidence.  (Doc. No. 16.)  In the Motion, Defendant brings a Fourth Amendment challenge to the search of the vehicle and the seizure of the firearm and ammunition.  Defendant argues that since the officers lacked probable cause to arrest him and to search his vehicle, the firearm and ammunition seized should be suppressed.  In response, and after an evidentiary hearing on the Motion, the Government filed Proposed Findings of Fact and Conclusions of Law Regarding the Defendant's Motion to Suppress Evidence.  (Doc. No. 38.)

Second, the Government and Defendant have filed opposing Motions in Limine to either admit or exclude certain "other acts" evidence obtained by the police before and during the arrest of Defendant.  This includes eye-witness testimony by the PPD officers regarding drug-related activity observed before the arrest, as well as tangible drug-related evidence they recovered during the search of the Defendant's person, vehicle, and its trunk.  For his part, Defendant filed a Motion in Limine to Bar the Government's Evidence of Other Acts (Doc. No. 21), seeking to exclude this evidence at trial.  The Government, on the other hand, seeking to admit this evidence at trial, filed a Motion in Limine to Admit Evidence as Intrinsic to the Crimes Charged in the Indictment or Under Federal Rule of Evidence 404(b) (Doc. No. 27).

On March 3, 2022, an evidentiary hearing was held, during which PPD officers involved in the covert surveillance operation testified.  Following the hearing, the parties were instructed by this Court to submit supplemental memoranda on the admissibility at trial of evidence of drug transactions and paraphernalia in a case where the sole charge was a gun offense under 18 U.S.C. § 922(g)(1).  On April 4, 2022, the Government filed its Supplemental Brief in Support of its Motion in Limine to Admit Evidence as Intrinsic to the Offense Charged in the Indictment or Under Federal Rule of Evidence 404(b) (Doc. No. 37), and on April 8, 2022, Defendant filed a Supplemental Brief in Support of [his] Motion to Suppress Physical Evidence and Motion in Limine to Bar Prior Bad Acts Evidence (Doc. No. 39).

For reasons that follow, Defendant's Amended Motion to Suppress (Doc. No. 16) and Motion in Limine to Bar the Government's Evidence of Other Acts (Doc. No. 21) will be denied. The Government's Motion in Limine to Admit Evidence as Intrinsic or Extrinsic under Rule 404(b) (Doc. No. 27) will be granted in part and denied in part.

## II.    FINDINGS OF FACT

On March 3, 2022, an evidentiary hearing was held on the Motions.  The Court heard testimony from PPD Officers Brandon Moore, Jonathan Dedos, and Frank Kennedy and watched a video from a police body camera.  The following facts were adduced at the hearing.

On September 30, 2020, PPD's 16th District NET conducted a law enforcement operation near 1232 North 42nd Street in West Philadelphia, an area where there are frequent reports of drug dealing and gun violence.  (Doc. No. 32, Suppression Hearing Transcript, March 3, 2022 ("Tr.") at 13–14.)  At around 5:15 p.m., Police Officer Brandon Moore ("PO Moore"), a five-year veteran of the NET, noticed Defendant Lloyd sitting on the steps of 1232 North 42nd Street and conversing with several other men.  (Tr. at 15.)  Approximately fifteen minutes later, PO Moore observed a man in an orange hat approach Defendant and "discreetly" hand him an unknown amount of U.S. currency in return for unknown, small items.  (Tr. at 15, 21.)  This man, later identified as Richard Ross[1] ("Ross"), left the group and went northbound on 42nd Street.  (Id. at 15.)

At this point, PO Moore radioed his team members with a description of Ross and the direction in which he was traveling.  (See id. at 25.)  Shortly thereafter, Police Officer Frank Kennedy ("PO Kennedy") responded on the radio that he had stopped Ross and that he was "positive," which PO Moore understood to mean that Ross had been found with narcotics in his possession.  (See id. at 23–24.)  In fact, PO Kennedy had recovered from Ross what he believed to be crack cocaine.  (Id.)

---

[1]    PO Moore and other officers were familiar with Richard Ross because he had a prior arrest for drug possession in the 16th District.  (Tr. at 20; see also Doc. No. 27 at 6.)

PO Moore then continued his surveillance of Defendant.  (Tr. at 24.)  Approximately twenty minutes later, at about 5:50 p.m., PO Moore observed another individual, Sharon Reed[2] ("Reed") approach Defendant as he sat on the steps.  (Id.)  Moore saw Reed engage in a conversation with Defendant and exchange a sum of U.S. currency for several small items.  (See id. at 25.)  Again, PO Moore informed his surveillance team members of what he had seen, providing a physical description of Reed and the direction in which she was headed.  (Id.)  Shortly thereafter, Police Officer Barry Stewart ("PO Stewart") radioed PO Moore that he had stopped Reed and that she also possessed suspected narcotics in two pink vials with flip tops.  (Id. at 41, 56.)

"Within a few seconds" of hearing from PO Stewart, PO Moore saw Defendant walk toward a white Nissan Altima parked nearby and open the trunk using a key fob.  (Tr. at 26, 28.) According to PO Moore, Defendant "reach[ed] into the back of the trunk and move[d] items around," and was the only person seen accessing the vehicle during this surveillance operation. (Id. at 27, 28.)  PO Moore promptly relayed information about Defendant's actions in the trunk of the vehicle to his fellow NET officers, and at 6:30 p.m., Moore instructed them "to arrest the defendant for engaging in two narcotics transactions with Ross and Reed."  (Id. at 29.)

After receiving this instruction from PO Moore, Police Officer and NET member Jonathan Dedos ("PO Dedos") responded within two to three minutes and located Defendant based on his description.  (Tr. at 57.)  Accompanied by other officers including PO Kennedy and PO Stewart, PO Dedos approached Defendant as he stood near the rear of the car and arrested him.  (Id. at 57–58.)  The officers then placed Defendant in handcuffs.  (Id. at 58.)  PO Dedos searched him and recovered $17 in U.S. currency, three red-tinted vials containing marijuana residue, and a set of

---

[2]    The officers also were familiar with Sharon Reed.  She had a prior arrest for drug possession in the 16th District.  (Doc. No. 27 at 6.)

car keys for the Nissan Altima.  (Id. at 58.)  The car keys were given to PO Kennedy, and Defendant was placed in the back of a marked patrol vehicle.  (Id. at 59.)  Thereafter, PO Dedos searched the area surrounding the front passenger seat, recovering $230 and a small digital scale, commonly used for weighing and segregating precise quantities of drugs.  (See id. at 59, 65.)

At the direction of PO Moore, PO Kennedy used the car keys to open and search the trunk of the Nissan Altima.  (Tr. at 77.)  As captured on body camera footage, PO Kennedy discovered one large plastic bag, which contained two smaller bags, in the trunk.  (Id. at 77.)  PO Kennedy recovered from the first smaller bag "a little bit over 100 vials of marijuana" and from the second smaller bag a black .357 revolver containing six live rounds of ammunition.  (Id. at 77–78.)  PO Kennedy later learned that Defendant did not have a permit to carry a firearm in Philadelphia, and that the Nissan Altima was registered to Defendant.  (Tr. at 79–80.)

## III.    CONCLUSIONS OF LAW

### A.  Defendant's Amended Motion to Suppress Physical Evidence Will Be Denied

In the Amended Motion to Suppress, Defendant argues that the firearm and ammunition should be suppressed because the police did not have probable cause to search his vehicle and seize the firearm from the bag in the trunk.  (Doc. No. 16 at 1.)  For reasons that follow, Defendant's Amended Motion to Suppress (Doc. No. 16) will be denied.

The Fourth Amendment protects the "right of the people to be secure in their persons, houses, papers, and effects, against unreasonable searches and seizures."  U.S. CONST. amend. IV. It provides that this right "shall not be violated, and no Warrants shall issue, but upon probable cause, supported by Oath or affirmation, and particularly describing the place to be searched, and the persons or things to be seized."  Id.  Evidence obtained in violation of the Fourth Amendment may not be introduced at trial.  See Davis v. United States, 564 U.S. 229, 232 (2011).  On a motion to suppress, "the burden of proof is on the defendant who seeks to suppress evidence."  United

States v. Johnson, 63 F.3d 242, 245 (3d Cir. 1995) (internal citations omitted).  Whether a search is reasonable will depend upon its nature and the circumstances surrounding it.  United States v. Whitted, 541 F.3d 480, 484 (3d Cir. 2008).  Generally, warrantless searches are presumed to be unreasonable and suppression of all evidence obtained from an unreasonable search is the appropriate remedy.  See id. (citing Cady v. Dombrowski, 413 U.S. 433, 439 (1973)).

In his Amended Motion to Suppress, Defendant argues that the police did not have a warrant and probable cause to search his vehicle.  (Doc. No. 16 at 5.)  The Government concedes that its search of the vehicle was executed without a warrant.  (See Doc. No. 38 at 5.)  However, the Government argues that the firearm and ammunition found in the bag in the trunk of the vehicle during the search are admissible for two reasons: (1) the search of Defendant's vehicle falls within the automobile exception to the warrant requirement; and (2) the search of Defendant's vehicle occurred incident to his lawful arrest.  The Court will address these arguments seriatim.

## 1.    Automobile Exception

The automobile exception to the warrant requirement permits law enforcement to seize and search an automobile without a warrant if "probable cause exists to believe it contains contraband." United States v. Burton, 288 F.3d 91, 100 (3d Cir. 2002) (citing Pennsylvania v. Labron, 518 U.S. 938, 940 (1996)).  If a warrantless search of the vehicle is authorized under the automobile exception, the Government is permitted to conduct a warrantless search of the entire vehicle, including concealed compartments, so long as the area could conceal the object of the search. United States v. Ross, 456 U.S. 798, 804–09, 825 (1982) ("[A] search is not unreasonable if based on facts that would justify the issuance of a warrant, even though a warrant has not actually been obtained.").

Probable cause exists "when, viewing the totality of the circumstances, 'there is a fair probability that contraband or evidence of a crime will be found in a particular place.'" United States v. Hodge, 246 F.3d 301, 305 (3d Cir. 2001) (quoting Illinois v. Gates, 462 U.S. 213, 238 (1983)). Regarding the trunk of a vehicle under the automobile exception, "[t]he police need have no more exact suspicions to search a trunk than are required to search the passenger compartment under the automobile exception, nor need they have independent reason to believe that the contraband for which they are searching is located specifically in the trunk." United States v. Byrd, 813 F. App'x 57, 61 (3d Cir. 2020) (quoting United States v. Rickus, 737 F.2d 360, 367 (3d Cir. 1984)).

The Third Circuit Court of Appeals has applied the automobile exception to a vehicle search where probable cause arose from observed drug trafficking. In United States v. Dennis, 527 F. App'x 221 (3d Cir. 2013), the court affirmed the denial of a defendant's motion to suppress items seized during a warrantless search of his vehicle. Id. at 223. In Dennis, the Drug Enforcement Administration ("DEA") intercepted phone calls between the defendant and a known drug dealer discussing a drug buy at a designated time and place in Philadelphia. Id. DEA agents surveilled the location and observed the defendant arriving in a car, the drug dealer and another man entering the defendant's car, the drug dealer and other man exiting the car, and the defendant driving away. Id. Based on the DEA's tip of drug activity involving the defendant's car, Pennsylvania state troopers pulled over the car, seized it, and conducted a search of the entire vehicle.[3] Id. Finding that "the DEA's tip was sufficient to provide the state police with probable

---

[3]   Although the DEA asked the state troopers to intercept Dennis because they believed narcotics would be found in his vehicle, "[t]he DEA agents asked the police to develop an independent basis for stopping Dennis . . . to conceal their ongoing investigation of [the drug dealer]." Dennis, 527 Fed. App'x at 222. Thus, the state troopers pulled over the car for a violation of the Pennsylvania motor vehicle code. See id. Although Dennis was not arrested, the troopers

cause to conduct a warrantless search of [the defendant's] car" under the automobile exception, the Third Circuit held:

> Given the facts arising out of the DEA's investigation, probable cause existed to believe that Dennis's car contained contraband.  Recorded phone calls revealed Dennis's plan to purchase drugs from A.G., a known drug dealer, at a specific time and location.  DEA agents then observed A.G. enter Dennis's car at the specified time and location.  These facts permitted the DEA agents to conclude that A.G. and Dennis had consummated their planned transaction and that drugs were present in Dennis's car—facts which the DEA communicated to the Pennsylvania state police.  Thus, the state troopers had probable cause to search Dennis's car.

Dennis, 527 F. App'x at 224.

Here, though the facts are different from those in Dennis, the police officers involved in the arrest of Defendant Tauheed Lloyd still had probable cause to search his entire vehicle under the automobile exception based on observed drug trafficking and Defendant's interaction with his car soon after the transactions.  As noted above, PO Moore observed two separate hand-to-hand transactions between Defendant and individuals subsequently found to be in possession of narcotics when stopped by fellow NET officers.  (See Tr. at 15; 22–26; 76.)  Specifically, PO Moore observed Ross and Reed separately approach Defendant at the steps and hand him U.S. currency in return for small items.  (Id. at 15, 22–26.)

Following each transaction, PO Moore relayed information to his fellow NET members about Ross' and Reed's respective directions of travel, and both were found in possession of illicit drugs when stopped.  (See id. at 22–23; 25–26; 75–76.)  Shortly, after the second transaction with Reed, PO Moore witnessed Defendant open the trunk of his Nissan Altima and move items around.

---

seized his car "because they suspected it contained contraband."  Id.  While the troopers later obtained a warrant to search the car after it was impounded, the district court and the Third Circuit considered the search to be a warrantless one.  Id. at 222–23.  Therefore, in Dennis, the Third Circuit applied the automobile exception for warrantless searches because the police had "probable cause to search when they initially stopped the vehicle."  Id. at 223.

(Id. at 26–28.)  He was the only person at the car.  Based on the totality of these facts, there was a fair probability or probable cause to believe that the vehicle contained contraband, as Defendant was seen engaging in what the officers believed to be drug transactions and then going to his car to search for items.  See Burton, 288 F.3d at 100 (citing Labron, 518 U.S. at 940).

Even though Defendant was not driving his car and was not inside the car when the officers observed drug trafficking, shortly after observing the two illicit drug sales, the officers saw Defendant unlock the Nissan Altima, open the trunk, and move items around.  This series of events gave the officers probable cause to believe that Defendant's car was the place where he stored his drug supply.[4]  Because probable cause existed, the officers were permitted to search the entire vehicle, including concealed compartments that could hide the object of the search.  Ross, 456 U.S. at 804–09, 825.  This would include the vehicle's trunk, in which the contraband the officers were searching for could be concealed.  (Doc. No. 38 at 3; Tr. at 26–28.)  Thus, because there was a fair probability that contraband would be found in Defendant's vehicle, the automobile exception to the Fourth Amendment applies, and the police were permitted to conduct a warrantless search of the entire vehicle.  For this reason, the firearm and ammunition seized from the car will not be suppressed.

---

[4]    Absent Defendant's observed actions in opening the trunk and moving the items in it, the police would not have had probable cause to believe that the car contained contraband.  This would have precluded application of the automobile exception here.  As noted above, Defendant was not seen driving the car or entering the passenger compartment during the illicit drug sales, unlike in Dennis.  Although Defendant was observed "sitting or standing next to the . . . rear passenger side of the white Nissan Altima" before he was arrested (see Tr. at 58), his actions with the trunk shortly after the suspected drug deals are what provided the PPD with enough additional evidence to establish probable cause to believe that the car contained contraband.

2.        **Search Incident to Lawful Arrest**

In the alternative, the Government argues that the warrantless search of the vehicle was lawful as a search incident to a lawful arrest.  Officers may perform a search of a detainee's person and the area within his immediate reach incident to a constitutionally permissible arrest in order to ensure their own safety and to safeguard evidence.  United States v. Robinson, 414 U.S. 218, 235 (1973); see also Virginia v. Moore, 553 U.S. 164, 178 (2008) (holding that search incident to lawful arrest is proper).  The search of a detainee's car incident to an arrest is permitted only in two situations: (1) when it is reasonable to believe that evidence of the offense of arrest might be found in the vehicle or (2) the arrestee is unsecured and within reaching distance of the passenger compartment at the time of the search.  Arizona v. Gant, 556 U.S. 332, 351 (2009) ("[C]ircumstances unique to the vehicle context justify a search incident to a lawful arrest when it is reasonable to believe evidence relevant to the crime of arrest might be found in the vehicle."); see also Davis v. United States, 564 U.S. 229, 235 (2011).

Generally, the exception to the warrant requirement for a search incident to a lawful arrest does not extend to the trunk of the vehicle.  United States v. Baker, 221 F.3d 438, 443 (3d Cir. 2000), as amended (Sept. 21, 2000).  However, the prohibition against searching the trunk of a vehicle incident to lawful arrest does not apply if a search of the trunk is "justified by independent grounds, such as 'probable cause' to anticipate the presence of contraband."  United States v. Wogan, 356 F. Supp. 2d 462, 467 (M.D. Pa. 2005) (citing California v. Acevedo, 500 U.S. 565, 569–70 (1991)).

The primary inquiry, therefore, is whether the arrest itself was based on probable cause. Officers "do not need a warrant to arrest an individual in a public place as long as they have probable cause to believe that person has committed a felony."  Burton, 288 F.3d 91, 98 (3d Cir.

2002) (quoting <u>United States v. McGlory</u>, 968 F.2d 309, 342 (3d Cir. 1992)).  Here, because there was probable cause to make the initial arrest of Defendant, the search of the vehicle was valid incident to his lawful arrest.  As explained above, the 16th District NET officers had probable cause to arrest Defendant for drug trafficking based on their recovery of alleged crack cocaine and marijuana from Ross and Reed soon after their hand-to-hand transactions with Defendant.  (<u>See</u> Tr. at 21; 25; 75–76.)

      The Third Circuit has upheld a warrantless car search incident to a lawful arrest where a defendant was arrested for observed drug trafficking.  <u>United States v. Vazquez</u>, 449 F. App'x 96, 98 (3d Cir. 2011).  In <u>Vazquez</u>, police stopped the defendant's car because a DEA investigation revealed, <u>inter alia</u>, that he was a retail distributer for a drug trafficking organization and that he had earlier completed a drug deal using his car.  <u>Id.</u> at 98.  After a warrantless vehicle search revealed illicit drugs, Vazquez was arrested for drug-trafficking.  <u>Id.</u> at 98–99, 108.  Noting that "circumstances unique to the vehicle context justify a search incident to a lawful arrest when it is reasonable to believe evidence relevant to the crime of arrest might be found in the vehicle," <u>see</u> <u>Gant</u>, 556 U.S. at 343 (quotation marks omitted), the Third Circuit affirmed the denial of Vazquez's motion to suppress:

> The informant's arrangement to purchase crack cocaine minutes before Vazquez's appearance, the informant's accurate prediction regarding Vazquez's appearance and arrival, a report that Vazquez engaged in a drug deal earlier that day driving the same vehicle, and the narcotics-detection dog's positive alert, taken together, established a reasonable basis to believe that evidence of drug-trafficking would be found in Vazquez's vehicle.  Because the police had reasonable suspicion to stop Vazquez and a reasonable basis to believe that drugs would be found in his vehicle, the District Court properly denied Vazquez's motion to suppress the evidence.

<u>Vazquez</u>, 449 F. App'x at 102 (3d Cir. 2011).

      In this case, the search of the vehicle also was valid for being incident to Defendant's lawful arrest because the police had sufficient information to believe that drugs would be found in his

vehicle.  Again, while Defendant was not driving or inside the car when he was arrested, he was observed by PO Moore searching through the trunk of his car soon after completing two illicit drug sales.  Based on what the officer observed of Defendant's drug trafficking activities and his movements in the trunk, it was reasonable for the officers to believe that evidence of drug trafficking, the crime of arrest, would be found inside the Nissan's passenger compartment and trunk.  Gant, 556 U.S. at 351.  And because the first prong of Gant is satisfied, requiring reasonable belief that evidence of the offense of arrest might be found in the vehicle, Defendant need not have been unsecured and within reaching distance of the passenger compartment at the time of the search for the search incident to a lawful arrest exception to apply.

Moreover, although a warrantless search of a vehicle incident to a person's lawful arrest generally does not extend to its trunk, see Baker, 221 F.3d at 443, this limitation would not apply here because there was independent probable cause for the officers to believe that the trunk contained contraband.  See Wogan, 356 F. Supp 2d at 467.  Specifically, PO Moore's observation of Defendant going straight to his trunk after the second suspected hand-to-hand drug transaction with Reed and moving items in it provided a sufficient "independent ground" establishing probable cause to believe that relevant contraband would be found inside the trunk.  Id.

Therefore, because both exceptions to the warrant requirement, the automobile exception and search incident to lawful arrest exception apply here, the firearm and ammunition seized from the trunk of the car by PPD officers are admissible at trial.  Accordingly, Defendant's Amended Motion to Suppress Physical Evidence (Doc. No. 16) will be denied.

### B. Motions in Limine Regarding Other Acts Evidence

As noted above, the parties have filed opposing Motions in Limine to either admit or exclude certain "other acts" evidence and testimony gathered before and during the arrest of

Defendant.  This would include drugs, drug paraphernalia, and cash recovered from Defendant's person and his car.[5]  (See Doc. Nos. 21, 27.)  In Defendant's Motion in Limine to Exclude such evidence, he argues that this evidence is not intrinsic to the firearm charge in this case because "what is pertinent[] is whether or not Defendant knew there was a firearm and had the intent to control it while in the vehicle; thus, Defendant's interactions with the vehicle are paramount, not Defendant's alleged drug transactions and not the specific mention of controlled substances." (Doc. No. 21-1 at 2.)  He also argues that the drugs, drug paraphernalia (the vials and small digital scale), and cash should be excluded under Federal Rule of Evidence 404(b), which provides:

> **(b) Other Crimes, Wrongs, or Acts.**
>
> > **(1) Prohibited Uses.**  Evidence of any other crime, wrong, or act is not admissible to prove a person's character in order to show that on a particular occasion the person acted in accordance with the character.
> >
> > **(2) Permitted Uses.**  This evidence may be admissible for another purpose, such as proving motive, opportunity, intent, preparation, plan, knowledge, identity, absence of mistake, or lack of accident. . . .

FED. R. EVID. 404(b)(1)–(2).

By contrast, in the Government's Motion in Limine, they seek to introduce this evidence as intrinsic to the firearm charge, arguing that the information is "needed to establish [] [D]efendant's knowledge and ability to exercise control of the contents in his car . . . because the firearm at issue in this case was recovered from the trunk of [] [D]efendant's car," where 100 vials of marijuana also were found.  (Doc. No. 27 at 4–5.)  In the alternative, the Government seeks to introduce the evidence as extrinsic under Rule 404(b), positing that this evidence is admissible to

---

[5]   As explained earlier, recovered from Defendant's person were $17 and three tinted red vials with marijuana residue.  Recovered from the passenger compartment of the Nissan were $230 and a small digital scale.  And recovered from the bags in the trunk were 100 vials of marijuana and the firearm with ammunition at issue in this case.

show Defendant's knowledge of the firearm's presence and a motive for possessing the firearm. (Id. at 5.)

Given these opposing positions, the Court first will address whether the "other acts" evidence at issue is intrinsic or extrinsic to the firearm charge, and whether they are admissible at trial.

### 1. Intrinsic and Extrinsic Evidence

Evidence is considered "intrinsic" if it "'directly proves" the charged offense.  United States v. Green, 617 F.3d 233, 248 (3d Cir. 2010) (citations omitted).  Put differently, "uncharged acts performed contemporaneously with the charged crime may be termed intrinsic if they facilitate the commission of the charged crime."  Id. at 249 (quoting United States v. Bowie, 232 F.3d 923, 929 (D.C. Cir. 2000) (internal quotation marks omitted).  The Third Circuit has limited "intrinsic" evidence to two narrow categories: (1) where the uncharged conduct directly proves the charged offense; and (2) where it is performed contemporaneously with the charged crime and facilitates the commission of the charged crime.[6]  Green, 617 F.3d at 245.  Unlike extrinsic evidence, which will be explained below, evidence that is intrinsic to the crime charged does not fall within Rule 404(b).  Id.

---

[6]   In Green, the Third Circuit explained that "most circuit courts view evidence as intrinsic if it is 'inextricably intertwined' with the charged offense . . . or if it 'completes the story' of the charged offense."  Green, 617 F.3d at 248 (citing United States v. Cross, 308 F.3d 308, 320 (3d Cir. 2010)).  However, the Third Circuit made clear in Green that the "inextricably intertwined" test "is not our test for intrinsic evidence.  Like our predecessor res gestae, the inextricably intertwined test is vague, overbroad, and prone to abuse . . . "  Green, 617 F.3d at 248 (3d Cir. 2010).  Res gestae is a Latin term meaning "the events at issue, or other events contemporaneous with them."  Res gestae, BLACK'S LAW DICTIONARY (11th ed. 2019).  Therefore, the definition of intrinsic evidence in a criminal case in the Third Circuit is confined to the two categories listed above under Green.

By contrast, evidence which is not intrinsic to the crime is considered "extrinsic," and must undergo analysis under Federal Rule of Evidence 404(b) to be admissible at trial.  Rule 404(b) "generally prohibits the introduction of evidence of extrinsic acts that might adversely reflect on the actor's character, unless that evidence bears upon a relevant issue in the case such as motive, opportunity, or knowledge."  Huddleston v. United States, 485 U.S. 681, 685 (1988).  To be admissible under Rule 404(b), "evidence of uncharged crimes or wrongs must (1) have a proper evidentiary purpose; (2) be relevant; (3) satisfy Rule 403; and (4) be accompanied by a limiting instruction (where requested) about the purpose for which the jury may consider it."  United States v. Green, 617 F.3d 233, 240 (3d Cir. 2010).

### 2.   Whether Drug Evidence is Intrinsic or Extrinsic to the Firearm Charge

In this case, Defendant is charged with one count of possession of a firearm by a felon, in violation of 18 U.S.C. §§ 922(g)(1) and 924(e).  Section 922(g)(1) states:

> It shall be unlawful for any person--who has been convicted in any court of a crime punishable by imprisonment for a term exceeding one year . . . to ship or transport in interstate or foreign commerce, or possess in or affecting commerce, any firearm or ammunition.

18 U.S.C. § 922(g)(1).  Defendant also is charged under Section 924(e), which describes the penalties for this offense.  18 U.S.C. § 924(e).  To prove at trial that Defendant violated § 922 (g)(1), the Government must establish that: (1) Defendant has been convicted of a felony; (2) after this conviction, Defendant knowingly possessed the firearm; (3) at the time he possessed the firearm, Defendant knew of the previous conviction and knew that it was for a crime punishable by imprisonment for a term exceeding one year; and (4) Defendant's possession of the firearm was in or affecting interstate or foreign commerce.  See Third Cir. Model Jury Ins. § 6.18.922G (2021).

In the Government's Motion in Limine and Supplemental Brief, it argues that the drug paraphernalia, cash, and drugs recovered from Defendant's person and his car are intrinsic to the

firearm charge because the evidence supports that Defendant knowingly possessed the firearm consistent with the Government's constructive theory of possession, which "exists if an individual knowingly has both the power and intention at a given time to exercise dominion or control over a thing, either directly or through another person or persons."  (Doc. No. 37 at 2 (citing United States v. Lynch, 459 F. App'x 147, 151 (3d Cir. 2012)).)  Thus, the Government argues that the evidence of Defendant's drug-related activities "directly proves the firearms possession because it proves [Lloyd's] knowledge of the presence of the firearm in the trunk of the car and his ability to exercise control over it, which are at issue here."  (Doc. No. 27 at 10.)

In this case, however, the drug-related evidence does not satisfy the Third Circuit's test for intrinsic evidence.  First, the uncharged conduct involving the drugs, paraphernalia, and cash does not directly prove the charge of unlawful possession of a firearm by a felon.  Second, although the controlled substances were distributed close in time to the subsequent seizure of the firearm, the drug-related evidence does not necessarily facilitate the possession of a firearm.  A firearm could be used to commit a number of crimes.  And possessing a firearm is not tied only to possessing and trafficking in illicit drugs.  Hence, the two-part Green test is not satisfied.  The drug-related evidence is not intrinsic to the gun possession charge.

Although courts have held that recovered evidence of firearms may be considered intrinsic to a drug distribution charge,[7] the Government has not proffered case law to convince the Court

---

[7]   For example, in United States v. Adams, 759 F.2d 1099 (3d Cir. 1985), the court held that "weapons may be as much 'tools of the [drug] trade' as the most commonly recognized narcotics paraphernalia" in a case where defendants were charged in a large-scale narcotics conspiracy.  Id. at 1108.  Further, in United States v. Price, 13 F.3d 711, (3d Cir. 1994), the court held that "possession of weapons is 'highly probative of the large scale of a narcotics distribution conspiracy and the type of protection the conspirators felt they needed to protect their operation,'" in a case where the charges at issue were conspiracy to distribute and possession with intent to distribute cocaine and heroin.  Id. at 719.  However, these decisions are not dispositive here, where the only offense charged is unlawful possession of a firearm by

that the opposite is true.  At the hearing held on March 3, 2022, the Court requested the Government to submit decisions in which courts have held that drug transactions are intrinsic to a violation of 18 U.S.C. § 922(g)(1).  However, the cases cited by the Government in its supplemental memorandum to support its argument are not persuasive because they rely on the res gestae standard, which the Third Circuit has expressly rejected in Green.  (See Doc. No. 37 at 3–6.)

Several cases cited by the Government are from Circuits where the evidence was found to be intrinsic using the "res gestae" standard.  (See Doc. No. 37 at 5–6 (citing United States v. Cunningham, 702 F. App'x 489, 493 (8th Cir. 2017) (holding that, in felon in possession case, drug-related testimony was intrinsic under the res gestae standard and noting that "[i]ntrinsic evidence includes both evidence that is inextricably intertwined with the crime charged as well as evidence that merely 'completes the story' or provides context to the charged crime") (citations omitted); United States v. Williamson, 315 F. App'x 734, 737 (10th Cir. 2009) (holding drugs and paraphernalia recovered from the same backpack as a firearm were admissible in a felon in possession case as "part of the res gestae")).)  As noted supra, in Green, the Third Circuit expressly rejected the "res gestae" and "inextricably intertwined" standards for determining whether evidence was intrinsic, holding:

> Our resistance to the "inextricably intertwined" standard has not diminished . . . and today we make clear that this is not our test for intrinsic evidence.  Like its predecessor res gestae, the inextricably intertwined test is vague, overbroad, and prone to abuse . . . .

Green, 617 F.3d at 248.  Thus, the drug related evidence offered here is not intrinsic to the gun crime charged.

_____

a felon.  While possession of a firearm may facilitate drug trafficking, the sale of illicit drugs does not facilitate the possession of a firearm under the Green test.

### 3. Extrinsic Drug-Related Evidence is Admissible under Rule 404(b)

Because the drug-related evidence, however, is extrinsic to the gun crime charged, the Court will evaluate its admissibility under Rule 404(b). As noted previously, Rule 404(b) prohibits evidence of a crime "to prove a person's character in order to show that on a particular occasion the person acted in accordance with the character." United States v. Smith, 725 F.3d 340, 344 (3d Cir. 2013) (citing Fed. R. Evid. 404(b)(1)). However, this evidence may be admitted for another purpose, such as to show "motive, opportunity, intent, preparation, plan, knowledge, identity, absence of mistake, or lack of accident." Id. (quoting Fed. R. Evid. 404(b)(2)). When ruling on the admissibility of Rule 404(b) evidence, district courts must determine the following: (1) the evidence is offered for a proper purpose under Rule 404(b); (2) the evidence is relevant under Federal Rule of Evidence 402; (3) the evidence is not unfairly prejudicial under Federal Rule of Evidence 403, and (4) an appropriate limiting instruction can be given to the jury. Id. (citing Huddleston v. United States, 485 U.S. 681, 691 (1988)) (the "Huddleston test").

In its Motion in Limine, the Government asks the Court, in the alternative, to admit the drug-related "other acts" evidence as extrinsic under Rule 404(b), arguing that it has several proper purposes. Primarily, the Government argues that such evidence has the purpose of showing Defendant's knowledge, as the drug-related evidence "coupled with other evidence of ownership of and access to the car[] leads to the inference that [Defendant] knew about and could exercise control over all of the items in the car, including the drugs, drug paraphernalia, cash and, significantly, the firearm recovered from the trunk." (Doc. No. 27 at 14.) Further, the Government argues that such evidence establishes that he had a motive for possessing the gun in relation to the observed drug activities. (Id. at 15–16.) In Defendant's Motion in Limine, Defendant argues that

the evidence is not admissible, even under Rule 404(b), because it would not serve a proper purpose under Rule 404(b)(2).  (Doc. No. 39 at 4–5.)

After careful review, the Court agrees with the Government that the drug-related evidence is admissible for proper purposes mentioned above under Rule 404(b).  This conclusion is supported by decisions in which courts have admitted such evidence under Rule 404(b)(2) in cases with similar facts where the charge at issue was under § 922(g)(1) and drug crimes were uncharged. (See Doc. No. 37 at 3–6 (citing United States v. Jacobs, 44 F.3d 1219, 1225 (3d Cir. 1995) ("Evidence tending to show that the defendant was a participant in the selling of drugs was relevant under Rule 402 and was admissible under Rule 404(b) to show that the defendant had a motive for carrying a firearm."); United States v. Moon, 802 F.3d 135, 144 (1st Cir. 2015) (holding drug-related evidence found with gun in § 922(g)(1) case was admissible as evidence of motive under 404(b) because it "was relevant both to show Moon's control over the area where the gun was found and to prove his involvement in drug trafficking, which 'provides a compelling motive for possessing the gun, namely, to protect his drugs and drug money'"); United States v. Schmitt, 770 F.3d 524, 534 (7th Cir. 2014) (holding drug-related evidence in § 922(g)(1) case was properly admitted under Rule 404(b) because "the evidence proffered by the [G]overnment was relevant to motive," and that "[t]he testimony that Schmitt was a drug dealer and that drugs were found in his home when he was arrested was relevant to suggest to the jury why he would have a firearm"); United States v. Butler, 594 F.3d 955, 964 (8th Cir. 2010) (holding district court did not abuse its discretion in admitting "drug related evidence in a possession of a firearm case" under Rule 404(b) and providing a limiting instruction to the jury)).

In Jacobs, supra, the court reviewed a district court's admission of drug-related evidence in a case where the sole offense charged was for possession of a firearm by a convicted felon under

§ 922(g)(1).  Jacobs, 44 F.3d at 1220.  There, the district court admitted the similar evidence, noting

that the defendant had been observed dealing drugs when the firearm at issue was seized.  Id. at

1225.  In affirming the judgment of the district court, the Third Circuit held:

> The defendant next argues that the district court erred in admitting evidence
> suggesting that a drug transaction was being negotiated just before he allegedly
> pulled out the revolver and was arrested.  The defendant contends that this evidence
> was not admissible under FED. R. EVID. 402 and 404(b) and that it should have been
> excluded under FED. R. EVID. 403.  We disagree.
>
> Evidence tending to show that the defendant was a participant in the selling of drugs
> was relevant under Rule 402 and was admissible under Rule 404(b) to show that
> the defendant had a motive for carrying a firearm.  Moreover, exclusion of this
> evidence under Rule 403 was not warranted, since this evidence had significant
> probative value that was not substantially outweighed by the danger of unfair
> prejudice.

Jacobs, 44 F.3d at 1225.

Thus, in accordance with Jacobs and the decisions of other Circuits cited supra, the drug-

related evidence meets the first prong of the Huddleston test under 404(b)(2), that is, it shows

Defendant's motive for possessing the firearm in this § 922(g)(1) case.  In addition, the same

evidence also would show his knowledge that a firearm was in the car because he would need it to

protect his possession of the illicit drugs.

Further, the evidence is relevant under Rule 402.  "Relevant evidence" means evidence

having "any tendency to make the existence of any fact that is of consequence to the determination

of the action more probable or less probable than it would be without the evidence."  See FED. R.

EVID. 401, 402.  Here, the drug-related evidence tends to prove Defendant's knowledge of the

firearm within his possession and his motive for possessing it and to support the Government's

constructive possession theory.  In this regard, after Defendant made several hand-to-hand

exchanges, he was observed opening the trunk of his car and moving its contents.  Upon his arrest,

officers recovered from inside two small bags in the trunk 100 vials of marijuana and the firearm

at issue in this case.  The two smaller bags were stored in a larger bag.  In addition to $230 and a small digital scale recovered from the car's passenger compartment.  This evidence is consistent with the cash and similar vials found on Defendant's person.  Therefore, this evidence and testimony is probative of Defendant's constructive possession of the firearm, thus meeting the second prong of the Huddleston test.

Furthermore, there is no unfair prejudice in admitting this evidence under the Rule 403 balancing test.  Though prejudicial, it is not unfairly so, because it is probative of Defendant's motive, knowledge, and constructive possession of the firearm and any prejudice can be cured by a limiting instruction.  See FED. R. EVID. 403.  For example, in United States v. Butler, the Eighth Circuit quoted a limiting instruction given by the district court under similar circumstances and held that the district court did not abuse its discretion in admitting drug-related evidence under 404(b) in a case where the only offense charged was a violation of § 922(g)(1).[8]  Thus, a limiting instruction would "suffice to cure any risk of prejudice."  United States v. Adams, 2015 WL 894205 at *1 (E.D. Pa. Feb. 27, 2015) (citation omitted).  In this regard, the parties are directed to provide the Court with a proposed instruction, which should be filed of record for the Court's consideration.

---

[8]    The district court gave the following limiting instruction:

> Members of the jury, as I believe I indicated to you during the jury selection process, this case is a charge only that the defendant was in possession of a firearm when he had been previously convicted of a felony.  There is going to be some evidence in the case, and this is the beginning of some of that now, that does deal with drug transactions that may or may not have dealt with the defendant but are not at issue in this case.  The only issue in this case is the firearm charge.  The evidence is being admitted for the purposes of showing you the circumstances under which the firearm was found.

United States v. Butler, 594 F.3d 955, 963–64 (8th Cir. 2010).

Therefore, because the four-part test in <u>Huddleston</u> is satisfied, the drug-related "other acts" evidence at issue is admissible under Rule 404(b).  Accordingly, the Court will deny Defendant's Motion in Limine to Bar the Government's Evidence of Other Acts (Doc. No. 21) and will grant in part and deny in part the Government's Motion in Limine to Admit Evidence as Intrinsic or Extrinsic under Rule 404(b) (Doc. No. 27).

## IV.   CONCLUSION

For the foregoing reasons, the Court will deny Defendant's Amended Motion to Suppress. (Doc. No. 16.)  The firearm and ammunition are admissible at trial.  The Court also will deny Defendant's Motion in Limine to Bar the Government's Evidence of Other Acts (Doc. No. 21) and will grant in part and deny in part the Government's Motion in Limine to Admit Evidence as Intrinsic or Extrinsic under Rule 404(b) (Doc. No. 27).  The drug-related evidence is admissible as extrinsic evidence under Rule 404(b)(2).[9]  It is not admissible as intrinsic evidence.  An appropriate Order follows.

---

[9]   These items are: (1) $17 and three tinted red vials with marijuana residue recovered from Defendant's person; (2) $230 and a small digital scale recovered from the passenger compartment of Defendant's car; and (3) 100 vials of marijuana recovered from the trunk of Defendant's car.