IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

UNITED STATES OF AMERICA,

v.

TAUHEED LLOYD,

            Defendant.

CRIMINAL ACTION
NO. 21-81

**OPINION**

**Slomsky, J.**　　　　　　　　　　　　　　　　　　　　　　　　　　　　　　　**July 31, 2024**

## I.   INTRODUCTION

Defendant Tauheed Lloyd ("Defendant"), who is currently serving a 57-month sentence, moves to vacate, set aside, or correct his sentence pursuant to 28 U.S.C. § 2255.[1] (Doc. Nos. 66, 71.) In Defendant's Motion, he contends that his defense counsel was constitutionally ineffective for two reasons. First, Defendant argues that his counsel was ineffective because no motion to dismiss the indictment was filed. (See Doc. No. 71 at 4.) Second, Defendant contends that his counsel was ineffective because his attorney did not "challenge [the] incorrect 4 level enhancement" under United States Sentencing Guidelines Section 2K2.1(b)(6)(B). (Id. at 6-7.) Taken together, Defendant alleges that his counsel's deficiencies prejudiced him and asks this Court to vacate his sentence. (Id. at 12.)

---

[1] Before Defendant filed his Section 2255 Motion (Doc. No. 71) that is the subject of this Opinion, he had filed an earlier Section 2255 Motion (Doc. No. 66), but he did not use the proper form which is published on the website of the Eastern District of Pennsylvania. Defendant was afforded the opportunity to file a new Section 2255 Motion using the correct form. He did so and filed the new Motion (Doc. No. 71). Both Motions raise the same issues and are being denied.

1

## II. BACKGROUND

On September 30, 2020, a Philadelphia Police Officer observed Defendant around 1200 North 42nd Street selling illicit drugs to multiple individuals in the proximity of a Nissan automobile (the "Nissan"). (See Doc. No. 76 at 2-3.) The Government describes the observed interactions as follows:

> On that date, Philadelphia Police Officers in the 16th District conducted a narcotics surveillance operation in the area of 1200 N. 42nd Street, a block that reported several shootings and drug arrests in the weeks prior. While on location, a police officer observed the defendant sitting on the steps of a residence, at which time R.R., a known drug user in the neighborhood, approached the defendant and handed him money after a brief conversation. Upon receiving the money, the defendant handed small items to R.R., who then departed the area. Officers encountered R.R. a short distance away and recovered two pink vials containing crack cocaine from R.R.'s pants pocket.
>
> Approximately 20 minutes later, an officer observed S.R., another known drug user in the neighborhood, approach the defendant and hand him an unknown amount of money and, in return, the defendant handed small items to S.R. After S.R. walked away from the defendant's location, she was stopped by officers who recovered two pink vials of crack cocaine and one blue vial of marijuana from S.R.'s person. After the interaction with S.R., an officer observed the defendant walk to a white Nissan, which was registered in the defendant's name, and access its trunk to move unknown items inside. Several police officers approached the defendant and placed him in handcuffs.

(Id. at 2.)

Subsequently, police officers seized drugs from Defendant's person. (See id.) In addition, from the Nissan, officers recovered a loaded revolver and two large plastic bags containing over 100 vials of marijuana. (See id.) The vials were similar to the vials recovered from individuals to whom Defendant sold the illicit drugs. (See id.) Officers also recovered in the Nissan a digital scale and $230 in cash. (See id. at 3.) On the same day, the officers arrested Defendant. (See id. at 2.) At the time of his arrest, Defendant did not have a permit to carry the recovered firearm and

had prior felony convictions[2] which prohibited him from lawfully possessing the firearm. (See id. at 3.)

On March 10, 2021, Defendant was indicted by a grand jury and charged with one count of possession of a firearm by a felon, in violation of 18 U.S.C. §§ 922(g)(1) and 924(e). (Doc. No. 1.) On November 8, 2022, pursuant to a guilty plea agreement, Defendant pled guilty to this offense. (Doc. No. 54.) On February 27, 2023, Defendant was sentenced to 57 months imprisonment, three (3) years supervised release, and a $100 special assessment. (Doc. No. 62.) The plea agreement included an appellate waiver provision. Defendant did not appeal his sentence.

On March 1, 2024, Defendant filed the present Motion to Vacate, Set Aside, or Correct a Sentence Pursuant to 28 U.S.C. § 2255.[3] (Doc. No. 71.) For reasons that follow, Defendant's Motions to Vacate, Set Aside, or Correct a Sentence Pursuant to 28 U.S.C. § 2255 (Doc. Nos. 66, 71) will be denied.

**III.     STANDARD OF REVIEW**

28 U.S.C. § 2255 provides:

> A prisoner in custody under sentence of a court established by Act of Congress claiming the right to be released upon the ground that the sentence was imposed in violation of the Constitution or laws of the United States, or that the court was without jurisdiction to impose such sentence, or that the sentence was in excess of the maximum authorized by law, or is otherwise subject to collateral attack, may move the court which imposed the sentence to vacate, set aside or correct the sentence.

---

[2] On August 18, 1995, Defendant pled guilty to robbery and was sentenced to a term of imprisonment of 2.5 to 10 years. (See Doc. No. 76 at 3.) Also, in the 1990s, Defendant was convicted of robbery, murder, and assault. (See id.)

[3] As noted supra, Defendant previously filed a Section 2255 Motion raising the same arguments, but he did not use the proper form which is published on the website of the Eastern District of Pennsylvania. (Doc. No. 66.)

Id. § 2255(a).  "Motions pursuant to 28 U.S.C. § 2255 are the presumptive means by which federal prisoners can challenge their convictions or sentences."  Chaney v. Warden Loretto FCI, 849 F. App'x 341, 343 (3d Cir. 2021) (quoting Okereke v. United States, 307 F.3d 117, 120 (3d Cir. 2002)).  Further, "an ineffective-assistance-of-counsel claim may be brought in a collateral proceeding under § 2255, whether or not the petitioner could have raised the claim on direct appeal."  Massaro v. United States, 538 U.S. 500, 504 (2003).

The test for demonstrating ineffective assistance of counsel on a § 2255 motion is set forth in Strickland v. Washington, 466 U.S. 668, 687 (1984).  To successfully show ineffective assistance of counsel, Defendant bears the burden of proving: (1) deficient performance by his attorney amounting to "errors so serious that counsel was not functioning as the 'counsel' guaranteed [to] the defendant by the Sixth Amendment"; and (2) that he was prejudiced by his attorney's performance due to "errors [that] were so serious as to deprive the defendant of a fair trial, a trial whose result is reliable."  United States v. Travillion, 759 F.3d 281, 289 (3d Cir. 2014) (quoting Strickland, 466 U.S. at 687).

Courts have applied the Strickland test to defense counsel's performance at different stages in a criminal proceeding.  Moreover, "[t]here can be no Sixth Amendment deprivation of effective counsel based on an attorney's failure to raise a meritless argument."  United States v. Sanders, 165 F.3d 248, 253 (3d Cir. 1999).

A defendant is not necessarily entitled to a hearing on their § 2255 motion.  See United States v. Arrington, No. 19-2973, 2021 WL 4097151, at *1 (3d Cir. Sept. 9, 2021) (holding district court did not abuse its discretion in declining to hold a hearing on § 2255 motion).  As the Third Circuit recently noted, a defendant is entitled to a hearing if he "alleges a set of facts that is not frivolous or clearly contradicted by the record" and demonstrates "that he would plausibly be

4

entitled to relief under Strickland." See id. at *3 (citation omitted).  In other words, "unless it can be conclusively shown that [the prisoner] cannot make out a claim for ineffective assistance of counsel," a district court must hold an evidentiary hearing.  United States v. Lilly, 536 F.3d 190, 195 (3d Cir. 2008); see also United States v. McCoy, 410 F.3d 124, 131 (3d Cir. 2005).

IV.  ANALYSIS

### A. The Ineffective Assistance of Counsel Claim for Failure to File a Motion to Dismiss the Indictment

First, Defendant asserts that his counsel was ineffective because counsel did not move to dismiss the indictment, arguing that Section 922(g)(1) violates Defendant's Second Amendment right to possess a firearm and for this reason is unconstitutional.  (See Doc. No. 71 at 4.)

The Second Amendment to the United States Constitution provides that "the right of the people to keep and bear Arms, shall not be infringed." U.S. CONST. AMEND. II.  However, "[l]ike most rights, the right [to bear arms] secured by the Second Amendment is not unlimited." District of Columbia v. Heller, 554 U.S. 570, 626 (2008).  As the Supreme Court in Heller explained:

> From Blackstone through the 19th-century cases, commentators and courts routinely explained that the right was not a right to keep and carry any weapon whatsoever in any manner whatsoever and for whatever purpose.  For example, the majority of the 19th-century courts to consider the question held that prohibitions on carrying concealed weapons were lawful under the Second Amendment or state analogues. Although we do not undertake an exhaustive historical analysis today of the full scope of the Second Amendment, nothing in our opinion should be taken to cast doubt on longstanding prohibitions on the possession of firearms by felons and the mentally ill, or laws forbidding the carrying of firearms in sensitive places such as schools and government buildings, or laws imposing conditions and qualifications on the commercial sale of arms.

Id. (citations omitted).

In New York State Rifle & Pistol Association, Inc. v. Bruen, the Supreme Court established a framework for determining whether a firearm regulation violates the Second Amendment.  142 S. Ct. 2111, 2129-30 (2022).  Under Bruen, courts must first decide whether the text of the Second

Amendment applies to a person and his proposed conduct. Id. at 2129. If so, "the Constitution presumptively protects that conduct" and the burden shifts to the government to "justify its regulation by demonstrating that it is consistent with the Nation's historical tradition of firearm regulation." Id. "Historical tradition can be established by analogical reasoning, which 'requires only that the government identify a well-stablished and representative historical analogue, not a historical twin.'" Range, 69 F.4th at 103 (quoting Bruen, 142 S. Ct. at 2133). Only if the Government meets this burden may a court conclude that the individual's conduct falls outside the Second Amendment's protection. Bruen, 142 S. Ct. at 2129.

In Range v. Attorney General, the Third Circuit considered a civil action brought by Bryan Range who sought a declaration that 18 U.S.C. § 922(g)(1) violated the Second Amendment as applied to him. 69 F.4th at 98. Range had pled guilty to one count of making a false statement to obtain food stamps in violation of 62 Pa. Cons. Stat. § 481(a), a conviction that precluded Range from possessing a firearm under 18 U.S.C. § 922(g)(1). Id. In Range, the Third Circuit held that, due to the nature of this prior conviction, the Government did not show that the Nation's historical tradition of firearm regulation supported depriving Range of his Second Amendment right to possess a firearm. Id. at 106.

As noted by the Government, district courts have widely held that Section 922(g)(1) is constitutional on its face and as applied to defendants who have prior felony convictions. See United States v. Lanier, 2023 WL 8255101, at *5 (E.D. Pa. Nov. 29, 2023); see also United States v. Campbell, No. CR 23-141, 2024 WL 2113474, at *6 (E.D. Pa. May 10, 2024); United States v. Cook, 2023 WL 8433510, at *2 (D. Del. Dec. 5, 2023); United States v. Harris, 2024 WL 1287619, at *3 (W.D. Pa. Mar. 26, 2024) ("Foundationally and procedurally, application of Range is limited to civil cases for declaratory relief seeking injunctive suspension of § 922(g)(1) for individuals

with a criminal history limited to the offense of food stamp fraud in violation 62 P. S. § 481(a) and/or individuals with criminal histories found to be sufficiently similar.").

For example, in Campbell, this Court denied a motion to dismiss the indictment based upon the constitutionality of Section 922(g)(1). See Campbell, 2024 WL 2113474, at *6. In so holding, this Court found that the prohibition on firearm possession in Section 922(g)(1) was both constitutional on its face and as applied to a defendant who was had prior convictions for robbery and carjacking and who was on parole at the time of his arrest. See id. Likewise, in Lanier, this Court also held that the limitations of Section 922(g)(1) were both facially constitutional and constitutional as applied to a defendant who had "repeated violent drug and firearm convictions" and was on parole while impermissibly possessing a firearm. 2023 WL 8255101, at *4. Accordingly, this Court denied the defendant's motion to dismiss the indictment. See id.; see also United States v. Pearson, No. CR 22-271, 2023 WL 6216527, at *4 (E.D. Pa. Sept. 25, 2023) (denying motion to dismiss the indictment because Section 922(g)(1) is constitutional both facially and as applied to the defendant).

Here, based on this precedent, a motion to dismiss the indictment alleging the unconstitutionality of Defendant's Section 922(g)(1) conviction would have been meritless. Defendant's circumstances are markedly different than those of the appellant in Range. The Third Circuit made clear that the decision in Range "is a narrow one" and "[b]ecause the Government has not shown that our Republic has a longstanding history and tradition of depriving people like Range of their firearms, § 922(g)(1) cannot constitutionally strip him of his Second Amendment rights." Id. at 106 (emphasis added). Defendant is not like Range. The appellant in Range "pled guilty to a non-violent offense entirely unrelated to armament." Green, No. CR 22-387, 2023 WL 6164407, at *2 (E.D. Pa. Sept. 21, 2023); see also Range, 69 F.4th at 112 (Ambro, J., concurring)

("Range committed a small-time offense. He did so with a pen to receive food stamps for his family. There is nothing that suggests he is a threat to society."). On the other hand, Defendant's criminal history shows disregard for the law, particularly for firearm regulations put in place to promote public welfare. For example, Defendant has previous convictions for murder and robbery. Following these convictions, Defendant knowingly possessed firearms while engaging in drug trafficking in violation of the conditions of his parole. (See Doc. No. 76 at 9.) In sum, the narrow holding in Range "did not displace [the] presumption [that prohibitions on the possession of firearms by felons is permissible], which accords with historical tradition." Green, 2023 WL 6164407, at *2. And even in Heller, supra, the Supreme Court noted the longstanding prohibition on the possession of firearms by felons. 554 U.S. at 626.

Thus, any motion to dismiss the indictment based on the unconstitutionality of Section 922(g)(1) would have been fruitless in this case because Defendant had previously been convicted of dangerous felonies and "[t]o hold 'section 922(g)(1) unconstitutional as applied to such individuals would effectively strip Congress of the ability to protect the public from a clear and present danger.'" Pearson, 2023 WL 6216527, at *3. In short, and as noted supra, "[t]here can be no Sixth Amendment deprivation of effective counsel based on an attorney's failure to raise a meritless argument." Sanders, 165 F.3d at 253.

Finally, whether or not to file a motion to dismiss the indictment was a decision "squarely within the realm of strategy and tactics and thus was a decision for [counsel] to make." Government of Virgin Islands v. Weatherwax, 77 F.3d 1425, 1435 (3d Cir. 1996). And in light of the substantial precedent on the constitutionality of Section 922(g)(1), it was a reasonable decision not to file a meritless motion to dismiss the indictment. Moreover, Defendant was not prejudiced

by this decision. Accordingly, Defendant's first claim of ineffective assistance of counsel is without merit.

### B. The Ineffective Assistance of Counsel Claim for Failure to Object to an Offense Level Enhancement in the Pre-Sentence Report

Second, Defendant alleges that his counsel was ineffective in failing to object to the Pre-sentence Report ("PSR") which noted that a four (4) offense level enhancement was applicable under U.S.S.G. § 2K2.1(b)(6)(B) for possession of the firearm in connection with another felony offense, drug trafficking. (See Doc. No. 71 at 5.) Defendant contends that based upon his one firearm offense, counsel was constitutionally ineffective because he did not challenge the application of this sentencing enhancement. (See id. at 5-6.)

Section 2K2.1(b)(6)(B) of the Sentencing Guidelines provides a four-level sentencing enhancement when a defendant "used or possessed any firearm . . . in connection with another felony offense." U.S.S.G. § 2K2.1(b)(6)(B). When "another felony offense" is drug trafficking, Comment 14(B) states that the enhancement applies if the firearm "is found in close proximity to drugs, drug-manufacturing materials, or drug paraphernalia." Id. § 2K2.1 cmt. n.14(B). This rule recognizes that "the presence of the firearm has the potential of facilitating another felony offense." Id. In addition, Comment 14(C) notes that "another felony offense" means any federal, state, or local offense, other than the explosive or firearms possession or trafficking offense, punishable by imprisonment for a term exceeding one year, regardless of whether a criminal charge was brought, or a conviction obtained." Id. at cmt.n.14(C).

Here, footnote 5 of the PSR, in support of the four (4) level enhancement under subsection (b)(6)(B), stated: "[a]lthough withdrawn, the defendant was charged locally with manufacture, delivery, or possession with intent to manufacture or deliver a controlled substance." (Doc. No. 76 at 34-35.) At the time of his arrest, Defendant was selling drugs out of the trunk of his car, as

noted by the Government on the record at sentencing. (See Doc. No. 72 at 5.) Thus, he committed "another felony offense" under U.S.S.G. § 2K2.1(b)(6)(B) at the time of his firearm possession. In addition, Defendant admitted to this fact at his change of plea hearing. The following colloquy took place:

GOVERNMENT
COUNSEL:   During the course of the surveillance, several officers observed the defendant exchange small objects for money with two individuals who were known to the police officers in the area as being drug-users. A short distance away, officers stopped each of the two individuals and recovered drugs from their person. After one of the exchanges with one of these drug users, the defendant accessed the trunk of his vehicle that was parked in front of the residence where he was standing. That vehicle was a Nissan sedan that was registered to the defendant in the name of 'Tauheed Abdul Lloyd' with PennDOT. After he was observed in the trunk area of the vehicle, police moved in and detained the defendant. They obtained the keys to the Nissan from his pants pocket and were able to unlock the Nissan; specifically, they popped the trunk area. In conducting a search of the trunk, officers found a large quantity of individually packaged vials of marijuana, along with a loaded, black in color .357 caliber Weihrauch revolver that had -- was loaded with six live rounds. It had a serial number of 1039172. Also in the vehicle, officers found a black digital scale and $230 in cash.

* * *

THE COURT:   All right. Mr. Lloyd, did you hear what the attorney for the Government said the Government would show at trial?

DEFENDANT:   Yes.

THE COURT:   Is that what happened?

DEFENDANT:   Yes.

THE COURT:   You admit to all of those facts?

DEFENDANT:   Yes.

THE COURT:   And you did what the Government says you did[?]

DEFENDANT:   Yes.

(Doc. No. 67 at 41-42.)  Further, at his sentencing hearing, Defendant stated that the information in the PSR was accurate, and no objections were made.  (Doc. No. 72 at 16-18.)  The PSR contained the same information about the drug transactions as described in the plea colloquy.  In this regard, Defendant answered as follows during the sentencing hearing:

| | |
|---|---|
| THE COURT: | All right. The – have you read the presentence report dated February 2, 2023? |
| DEFENDANT: | Yes. |
| THE COURT: | And have you reviewed the presentence report with your attorney? |
| DEFENDANT: | Yes. |
| THE COURT: | Has your attorney explained what's in the report and what it means? |
| DEFENDANT: | Yes. |
| THE COURT: | All right. And did he answer all your questions about the report and its contents? |
| DEFENDANT: | Yes, he did. |
| THE COURT: | Do you need any additional time to talk to your attorney about what's in the presentence report? |
| DEFENDANT: | No, sir. |
| THE COURT: | All right. Now, Mr. Tinari, is there anything in the report that's inaccurate or being objected to? |
| COUNSEL: | No, Your Honor. |
| THE COURT: | Same question for Government counsel? |
| GOVERNMENT COUNSEL: | No, Your Honor. |

(Id.)  Thus, at both the change of plea hearing and at sentencing, Defendant agreed that he was in possession of marijuana in addition to the firearm, and that he was seen selling drugs at the time

11

of his arrest. These facts supported the four (4) level sentencing enhancement under Section 2K2.1(b)(6)(B) of the Sentencing Guidelines. Thus, any objection to the enhancement by defense counsel would have been without merit, and for this reason there was no ineffective assistance of counsel.

In addition, Defendant was not prejudiced by the absence of an objection. To show prejudice under Strickland, Defendant must show "a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different. A reasonable probability is a probability sufficient to undermine confidence in the outcome." 466 U.S. at 694. In particular, in the case of a guilty plea, Defendant must demonstrate, "a reasonable probability that, but for counsel's errors, he would not have pleaded guilty and would have insisted on going to trial." Premo v. Moore, 131 S. Ct. 733, 743 (2011) (quoting Hill v. Lockhart, 474 U.S. 52, 59 (1985)).

Here, as noted, based on the facts admitted to by Defendant, the four (4) offense level enhancement was warranted. But, even if counsel had objected and this Court had not applied the sentencing enhancement at issue, the result of the proceeding would have been the same. At sentencing, Defendant's base offense level was 20, and a four (4) offense level enhancement was applied based upon the possession of a firearm in connection with the drug trafficking conduct, bringing his total offense level to 24. Defendant also received a two (2) level downward adjustment based on his acceptance of responsibility under U.S.S.G. § 3E1.1(a). Additionally, he received a one (1) level downward adjustment based upon his timely notice to the Government of his intent to enter into a guilty plea agreement. Thus, at sentencing, Defendant's total offense level was 21. Given his Criminal History Category of VI, Defendant's guidelines range at sentencing was 77 to 96 months imprisonment. On February 27, 2023, however, this Court imposed a below

guidelines sentence of 57 months imprisonment. The 57-month sentence also falls within the range negotiated by the parties pursuant to the plea agreement. See United States v. Cruz, No. 95-10-3, 1997 WL 260287, at *1 (E.D. Pa. May 12, 1997) ("Both [defendant] and her counsel signed the plea agreement. It would have been frivolous and indeed improper for her attorney then to argue against the sentencing enhancements or to argue for downward departures not stipulated to and not supported by the evidence.").

When a court issues a final Order denying a § 2255 motion, the court must also decide whether to issue or deny a certificate of appealability. See 28 U.S.C. § 2255; Fed. R. Crim. P. 11(a). A court may issue a certificate of appealability "only if the applicant has made a substantial showing of the denial of a constitutional right." § 2253(c)(2). A certificate of appealability will not issue in this case because Defendant has failed to make a substantial showing of the denial of a constitutional right. Finally, because the record and files conclusively show that Defendant is not entitled to habeas relief on his two claims of ineffective assistance of counsel, he is not entitled to a hearing on the instant Motion.

## V.  CONCLUSION

Accordingly, Defendant's Motions to Vacate, Set Aside, or Correct a Sentence Pursuant to 28 U.S.C. § 2255 (Doc. Nos. 66, 71) will be denied. The Court will not hold an evidentiary hearing and will not issue a certificate of appealability. An appropriate Order follows.